seated. Judge, the next case is number 21-1396, United States of Alejandro Gabriel Carrasco Castillo. At this time, the attorney Brill would introduce herself on the record to begin. Good morning, your honors. I'm Rachel Brill. I represent Alejandro Carrasco. I'd like to reserve two minutes for rebuttal. You may. Good morning again. This morning, I'd like to address the both of the sufficiency arguments in the brief, the failure to prove that Mr. Carrasco was an agent of the three municipalities with which he had contracts, the failure to prove the quo in the quid pro quo that's required in section 666, and also I'd like to address the obstruction of justice guideline enhancement that was incorrectly applied. So with respect to the first sufficiency argument, the agent, in this appeal, your honors, the court is asked to determine whether an attorney who maintained a private practice but who also had three different contracts with three different municipalities was an agent of all three of those municipalities for the purposes of section 666. And that statute, as the court is well aware, is a statute enacted to preserve the integrity of these local institutions that receive federal funds. Our contention is that it was incorrect for the district judge and for the prosecution now on appeal to focus on Mr. Carrasco's ability to represent the municipalities in court. It's only one of the many activities he could invoice for under those contracts, and it amounts to basically a kind of a simplistic syllogism, your honors, and one that the court should reject. The agent needs to be a representative, a lawyer is a representative, therefore the lawyer for these municipalities and the contracted independent contract lawyer is an agent. It's our contention that the statute requires more. It has to mean that an individual holds some sort of a position that if that position was corrupted would pose a threat to the integrity of the institutions. And more importantly, that position, that agency, that representation has to have a nexus with the corrupt activity. Doesn't that to me seems like it goes more to almost the quo issue than the agent issue, which is you could imagine, I mean it seems problematic potentially for us to take the position that a lawyer as such isn't the type of person who is within the ambit of the statute. And I know you're not saying that, but it's hard to see exactly how to draw that line. If he was employed, even if he was a line attorney, I think you wouldn't be making the argument you're making, I take it, would you? Well, he'd be an employee. That would be something that's directly, you know, mentioned under the statute. What is the word in the statute is representative. And so if we put aside one for the moment, the argument about whether a contract lawyer hired to represent the municipalities can constitute an agent. The reason it seems to run into the quo question is the last way you just phrased it, which is could he be corrupted in some way? And the argument you seem to be making is that, unless I'm misunderstanding it, nothing about the role he was performing related to the corrupt acts that he's alleged to have taken. Is that the idea? That's exactly the idea, Your Honor. I guess I'm just trying to think, is that an agent point or a quo point? I think there's overlap. I agree. And I have struggled with the overlap and I've tried to, you know, I put it as two separate issues, but I believe there's overlap. Yes. And I want to just stress what Your Honor exactly just said. Whatever Mr. Carrasco did under the contracts had nothing to do not with Mr. Mercado's contracts, not only had nothing to do with the corrupt activity. This is imagine, I mean, just address this point. And I guess I'm looking at it through the quo lens rather than the sufficiency on the agency side. The allegation is the argument that was made to the jury by the government is assuming that there was official acts and assuming you need to show official acts and that there was contract steering done by your client in return for the bribe. Contract steering is what you're saying? Yeah. Assuming that that happened. There's a question, was he doing that in any way that was related to his role as a representative of the municipality? And I guess my question is, why isn't that just a jury question? Well, so Your Honor is posing the question exactly correctly from our point of view as well. And the issue is whether there was any evidence to conclude that. And the answer is there was no evidence to conclude that. The government does say the money was paid in exchange for offering to help or in exchange for contract steering. And the government cites to two pages, two pertinent pages in the record, pages 239 to 240. And it starts with a leading question. Did he offer to do anything in exchange? Yes, he did. What was it? He kept me up to date about opportunities and he introduced me to the mayors so that I could help them. And again, you're addressing it, nothing about this had to do with his role as a contracted legal advisor for the municipality. So as a threshold matter, nothing, there was no nexus, there was no connection, there was no agent providing a the proof, the further proof, the further explanation of what those two contract steering items might have been. There was, again, regarding keeping him up to date, it stops right there. There's no allegation that anything confidential was provided to him. There's no issue of impropriety there. Nothing more than that bare statement. And regarding the introduction. Why wouldn't keeping him up to date would be potentially using his access to the information that he had through his affiliation with the town to keep him apprised of when the contracts would be available, so when you would need to jump on it. Well, again, that's a, we get to whether that, again, nothing, no details were provided about that. And there's a little overlap, no evidence, no details, and a little bit of overlap with this notion of, he introduced me to the mayors, he took me to the mayors and I was able to tell them what a great contractor I would be. And the contractor always said, I got those contracts on my merit and did a good job with them. The introductions to the mayors of Rio Grande and Barcelona took place years before the allegations in the indictments. The meetings of those mayors, the fact that the introduction to the Juncos mayor took place presumably in connection with the one Juncos contract that is alleged. So there's no evidence of your client, there's no evidence regarding what your client said to any public official vis-a-vis the contracts with Mercado? No evidence, no evidence of what he said. That's correct. There was a lunch, I imagine everybody spoke. Counselor, just to follow up on Judge Barrett's question, is there evidence here of anything that your client did to, in terms of interactions with, for example, the mayors who were implicated in the scheme? Is there any evidence of any interactions that he had with them in order to enhance the opportunity for Mr. Mercado to get these contracts? There is no evidence of any interactions with the mayors of Rio Grande and Barceloneta. There is testimony from Mercado that they had lunch, the three of them had lunch, the mayor of Juncos, Mercado, and Carrasco had lunch. And was there evidence that the contract was discussed at the lunch? Yes. Well, that's what the, yes. Well, not the contract. I really want to refer the court to the record. I don't have the pages, but I don't believe the contract was discussed. Well, that's really important. That's important. That's not a small detail. What's, well, the content of the conversation of that lunch is potentially... The content, I think all we know about the content of the conversation about that lunch is that the mayor described the problem, the environmental problem that he was having for which he needed an environmental engineer. That's what I understand was the... And the record is... Does the record show who arranged the lunch? I don't think so. I honestly did not read those pages carefully. It's a very self-contained amount of pages, and I don't want to misrepresent what they say. But the record says that the three of them were at the lunch, for sure. And that would be as to one of the counts, not all four of the counts. And it would still, we contend, be an insignificant quo, notwithstanding Judge Lopez's understanding that it's important. It's really akin to the kind of activities that the governor of Virginia engaged in and that were deemed insufficient in the McDonnell case. So that's... That's not quite right. I mean, give you a chance to respond to it. But I guess my... I thought, let's have lunch. I'd like to introduce you to the mayor. Under McDonnell, that's a problem. That's not enough. Let's have lunch. Let's talk about a contract. That's very different. Well, I don't think they were talking about a contract. I think they were talking about a problem. But let's have lunch... I mean, I think it is similar, though, to McDonnell. Let's have a reception where we're going to talk about this pharmaceutical product that I think is going to benefit the citizens of my state is very similar to let's have... And I'm the governor and I'm endorsing this product by having a big reception for it. I think that is similar to let's have lunch. So I can tell the mayor... You can tell the mayor if you can help. The mayor is the one talking to the contractor about his needs. Yes. That's quite different if that's arranged by the person being bribed. Because that is contract steering, isn't it? There's not a contract. There's a problem. So I... Well, he's meeting with a contractor who happens to be in the business that can solve the problem. It's allowed for some inference and circumstantial evidence. In other words, that's different than I'm introducing a person who's coming with a product. I haven't said I want anything. The government hasn't said what they need or anything. This is the circumstance in which the government... I think there's a circumstance in which the government... Yes. Council, the language of 666 is that talks about accepting a bribe in connection with any business transaction or series of transactions. I mean, if it seems to me that to return to the lunch, if your client arranged that lunch, having accepted this bribe, and at that lunch, a potential contract for work needed by the municipality, that would arguably meet the language of the statute, that that compensation was in connection with the business of the municipalities. The point of contention with the scenario that you just described, which I, once again, would refer the court to the record for precision, and I'm sorry that I can't be precise. You said the attorney having accepted the bribe, then arranged for the lunch. Or even the attorney having arranged for a bribe, then arranged for the lunch. That is not, I am certain, the sequence of events. There was no arrangement or agreement prior to the lunch that appears on the record. So that would be how I would address that. If I could just take a moment to address the obstruction of justice argument. I'll let you get to it, but I do have one question which just confused me in the briefing. Is a challenge to the jury instruction being made? I don't think so. It's a sufficiency argument, because the jury instruction. The reason I ask, because the jury instruction does not, if you say that it requires an official act, as I read that jury instruction, it says it requires the act of an official. But it did not say that it required an official act. And that seems quite different to me. But if it's not being raised, I mean, I didn't see it raised. I'm not raising the issue of the jury instruction. I'm raising the issue of sufficiency and the overlap of agent and quote. Thank you for just a moment to address the enhancement, which in a familiar refrain, in connection with this appeal, is awarded when a defendant does something that implicates the integrity of the criminal justice process. And some facts that I think might not be as clear as I want them to be from the brief, Mercado was arrested in February 2012. He begins cooperating a few weeks later in 2012, and he makes many, many recordings over many, many months of Mr. Carrasco, of my client. He makes recordings on the phone. He makes recordings in person. There are like 140 different recordings that are made by Mercado turned over in discovery, and only three of them are played at trial. They are from July 2013. So Mr. Mercado, who's recorded for hours and hours over months and months, does never knows in the course of all of those conversations that he's talking to a cooperator. He is never talking to a co-defendant. There was never a co-defendant relationship between the two of them. He was never talking to a government witness. That wouldn't happen until nine months later. So Mercado was not a witness. He was not a cooperator trying to elicit incriminating statements for more than a year in a series of recorded conversations. He was sent with a script, and he was sent from the investigating agents, and the entire set of conversations was choreographed. There was no intimidation. There was no threatening behavior. There was no illegal influence. There was no corruption or attack on the integrity of the criminal process at that time. There was no obstruction of justice. I'm not sure I'm following the argument. What is the relevance of the fact that he's a cooperator? That's why he's wearing the wire. It's a fact. It's not a... Oh, it doesn't... Well, the government... You're not suggesting that because of that, it would be impossible to have acted towards him in a way that would have obstructed justice. No, I'm not. And if I imply that, I am not suggesting that. No, I'm simply saying that... Then the question just becomes, what's the significance of him trying to say, don't tell the truth about it? The significance is, it is a snippet of a series of conversations that take place over more than a year in numerous, numerous recordings. And in that particular conversation and that series of conversations, he's exploring different avenues, and that's one of the avenues. And at one point, he... I mean, at one point, he said... Let me just... Let's say, is the effort to get him not to tell the truth about it enough to trigger the obstruction of justice enhancement? And if the answer is no, why not? Because the answer is no. The answer is no because telling a lie to an investigating agent that does not have a material impact on the investigation does not deserve the enhancement. Aiding and abetting in telling somebody to tell a lie, the final application note of the obstruction of justice enhancement suggests that perhaps aiding someone else to do something is implicated, but aiding someone to tell a lie to an investigating agent that does not have a material impact would not deserve the enhancement. It just depends on us accepting that the effort to get Mercado not to tell the truth would have cashed out only as him in an unsworn statement saying something false to the officer? He's sent in there by the agents to precisely elicit that kind of statement, so it only has a positive impact on the investigation. There's not... No one's alleging that it had a negative impact or it could have had a negative impact. He's going in there at the behest of the FBI. But telling someone to lie or persuading someone to lie or corruptly persuading or... What if he said, you know, and when it comes to trial and they put you on the stand, lie then too. That would be enough. Well, what if... But he didn't say that. No, no, I'm asking, would that be enough? So when under application of 4A, the words are threatening, intimidating, or illegally influencing, I think that that would fall under illegally influenced when it comes to trial. Okay, so then I guess the question here to me is in the exchanges that occurred, you're asking us to assume that in encouraging him to lie that was going to stop at statements unsworn to a law enforcement officer rather than in the obviously foreseeable proceeding, him also not lying if asked to do it. Is that right? They take tremendous issue, Your Honor, with the words obviously foreseeable proceeding. Okay. To the contrary, this is nine months before the grand jury even is impaneled in this case. Or nine months before he testifies. I don't want to say when the grand jury was impaneled. So there's a... The key to the argument is that we have to conclude it's not. Sorry, many different alternatives are discussed, including both of them going to the FBI. The whole course of how that could be done is arranged. And that's in July. In August, Mr. Carrasco does go to the FBI and get debriefed. So there is, you know, it's not an obviously foreseeable proceeding. Okay, great. Any further questions? Judge Lopez? Nothing. Thank you. Thank you. Thank you, counsel. At this time, Attorney Lockhart would introduce herself on the record to begin. Good morning, Your Honors. May it please the Court? Nicole Lockhart on behalf of the United States. The judgment of the District Court should be affirmed for the following reasons. First, as to the defendant's sufficiency challenges, the government presented more than ample evidence that the defendant was an agent of the municipalities at issue here. Separately, while the government was not required to prove that the defendant performed an official act under 18 U.S.C. 666, the jury here was effectively required to find one because of the instructions given. Second, the District Court did not abuse its discretion in admitting certain contracts and in permitting... Did the government take the position below that you're now taking on an appeal that an official act was not required? That's correct, Your Honor. It took... That was a question. It was a question. Please, excuse me. I have the impression that... Well, it's more than an impression. It's based upon your brief. That it's your position that once the defendant took the bribe, represented to Mr. Mercado that he was in a position to be helpful to him in unspecified ways, that that... That taking the money, representing that he was in a position to help, that was the crime, and that he didn't have to do anything. He did not have to interact with the mayors. He did not have to arrange meetings between Mercado and the mayors. He did not try to have to vouch for Mr. Mercado. He didn't have to do anything once he accepted the money, representing that he was in a position to do something. And I say that, I take that to be your position, and I'm reading from your brief, that you approvingly cite the court for this proposition. Carrasco violated section 666, the court determined, by agreeing to be influenced in connection with contracts to Barceloneta, Junkos, and Rio Grande, regardless, regardless of whether he, in fact, granted access to municipal contracts or watched Mercado's back. Is that your position, that simply accepting the money and doing nothing further, that that constituted a crime under 666? Yes, Your Honor. If I may first answer Judge Barron's question, the trial attorneys below did take the position that an official act, as that term is defined under McDonnell and in connection with section 201, is not required to be shown or proven under section 666, and that is consistent with the position that we are taking today. But then we've got the jury instruction, you can see, did require it? So the jury instruction below did not include the full McDonnell definition. What it did state in sum was that the jury was not permitted to convict the defendant if the only actions the defendant took were setting up a meeting, hosting an event, talking to another official, or sending a subordinate to a meeting. That's the first part, and then there's the second part. That's the second part. The first part of the McDonnell instruction was not included. But we would argue here that that instruction effectively did not permit the jury to convict on conduct than what is less. And you didn't object to that instruction? That's correct, Your Honor. I just am puzzled how all of a sudden now, having had that instruction which you didn't object to, you now are on appeal saying somehow you get to preserve the contention that an official act wasn't required. If you wanted to make that point, then you could have objected to the instruction, but you didn't. Your Honor, as a point of clarification, the government requested that instruction in response to the defense argument that the full McDonnell instruction was required because Section 666 required an official act as that term is defined in McDonnell. The government proposed this more limited instruction in response as to the type of conduct that would be sufficient to convict under 666. Okay, and then you say that is a requirement that satisfies McDonnell on appeal? It specifically discusses the types of conduct that would not be sufficient under McDonnell. No, I'm trying to understand in deciding this case whether we have to decide a question that we have not decided before, which is, is an official act required? And I cannot figure out from the government's briefing what your position on that is. I know you would like us to say it's not required, but you also say the jury was instructed in a way that required it to find everything that's required as if McDonnell applied, the official act applied. So, I can't quite figure out, and that's because of an instruction that you wanted. So, I'm trying to figure out whether in this case the actual question of whether an official act is required is really open for the government to be pressing, given the way you supported the instructions being given below. Yes, Your Honor. Let me see if I can clarify. Okay. So, below and here, the government contends that an official act, as that term is defined, is not required to show, or not required to be proven to convict under 18 U.S.C. 666, consistent with other circuits who have addressed that question head on. However, when the defense counsel asked for the full McDonnell jury instruction to include both parts of the test and to require the terms official act to directly be moved over into the jury instructions, the government contended, as it does now, that that was not a requirement. And the term official act is not included in the instruction itself. The second prong of the McDonnell test, the type of conduct setting up a meeting, et cetera, was included as the type of conduct that would not be sufficient to show a conviction. This approach is consistent, and I think... And what's the part, then, in the instruction that leads you to say they were effectively instructed on the official act? That is to the language I quoted to you to earlier. And I want to be clear that I'm not arguing that a full McDonnell jury instruction was given here, but merely that the jury was effectively instructed as to the types of conduct that would be insufficient. And to Your Honor's of whether this court needs to answer a question that it has not answered previously, the government contends that because of the instruction given here, this court can approach this question like others in the school, for example, where the court declined to address the question head on of whether an official act from McDonnell, from Section 201, is required under Section 666 because of the effective jury instructions that were given in that case. And that you asked for. That's correct, Your Honor. Okay. Judge Lopez? So, Judge Lopez, I think I've written down your question here, but please let me know if I don't answer it fully. So, I understand your question to be asking if the agreement to accept a thing of value, in this case, money, in exchange for the corrupt influence to engage or to be influenced in connection with a business transaction series of transactions is sufficient? Yes. In exchange for a representation that I will undertake certain acts to enhance the likelihood that you'll get the contract, that that, the representation that I will do certain things to help you win the contract, that that's enough, irregardless, and this seems to be what the judge said, irregardless of whether the defendant actually does anything to help Mercado win these contracts. Is that your position? Saying I will do it is enough. You don't have to actually do anything. Is that your position? That's correct, Your Honor. The agreement to be influenced with a prohibited act is sufficient. It does not require, Section 666 does not require that the defendant himself necessarily took the actions that he agreed with Mr. Mercado to take. But here, the government argued below. Well, excuse me, counsel. I mean, the statute, there's a sort of descriptive official act equivalent in Section 666. I mean, there is a reference to accepting a bribe in connection with any business transaction or series of transactions. What does that, what does that language mean? What does that require the government to prove in order to establish a violation under 666? Yes, Your Honor. Under the statutory language to Your Honor's first question regarding the agreement, 666A1B prohibits accepting or agreeing to accept anything of value. Below, the government argued that the business transaction or series of transactions, that is the quo in this case, that is what the defendant agreed to be influenced in connection with, was that the defendant agreed to advise the mayors to grant Mr. Mercado contracts, help him retain contracts that he was provided, and to be paid under these contracts. Okay, but again, and please be, but the government did not have to prove that he did any such thing, just representing that he would do it, could do it, in exchange for the money he got. That's enough. You do not have to prove that he actually did anything to affect a transaction or a series of transactions of any kind. Is that your position? That's correct, Your Honor. Under the statutory language, agreeing to accept a thing of value in exchange for those actions is sufficient to merit a conviction in this case. I think Justice Lopez is asking about the in-connection language. You seem to be saying in connection with just relates to the agreement, not to an agreement in connection with meaning and you did it. I think the in-connection within what we would argue here is that the in-connection relates to the specific items that he is agreeing to be influenced with. And so here, if he was agreeing to be influenced with merely making a phone call and doing nothing more, depending on the nature of that phone call, but here what the government's argument is, and what Mr. Mercado testified to, was that the defendant agreed to be influenced with, in connection with, the reward of contracts for Mr. Mercado in his role as a contractor for these municipalities. Could you address the lunch and whether there's anything in the record about what happened at that lunch and that goes only, as I understand it, to one of the counts and what other evidence there is that would be equivalent to the lunch that would support it as to the other counts? Certainly, Your Honor. The lunch was necessary context as to the nature of the relationship between the defendant and the mayors. Mr. Mercado testified about the lunch... Necessary context? Yes, in terms of the defendant's relationship with the mayors. So you're saying it's not the actual evidence of the count? No, Your Honor. I don't think there is record evidence, and I searched while Your Honors were asking if that was in the record. I don't believe the record... What indicates that, as an official, he did anything or agreed to do anything as an official in connection with any contract? So I can point to Mr. Mercado's testimony in which the defendant agreed to do those things in his role as a municipal contract attorney to advise the mayors in that respect. What does Mercado say in that regard? Give me just a moment, Your Honor. So specifically regarding some of the meetings with the mayors, Mr. Mercado testified about being introduced to the mayors, including Soluiz-Fontanez, the mayor of Barceloneta, who the defendant enjoyed a very personal, familiar, close relationship of many years. That's in the appendix at 214. What does Mercado say about what the nature of the agreement was? So I can point you to a couple of quoted language from the appendix, and the record sites are appendix 240 to roughly 242. The defendant would ask Mr. Mercado how much is in there for me in reference to the contracts that Mr. Mercado was seeking at this time for the various municipalities, and the defendant referenced any loose change. Mr. Mercado testified that the loose change referred to what are colloquially known as kickbacks, that is money paid out of the contract to Mr. Mercado that Mr. Mercado then in fact did go on to pay the defendant in this case. Mr. Mercado also testified that he endeavored to make payments to the defendant whenever he requested one because the defendant could be, quote, very aggressive in his efforts to collect money. That's the appendix at 242. And then specifically, Mr. Mercado testified that he expected the defendant to, quote, watch his back by, quote, providing access and protection and for Mr. Carrasco to wield his total influence with the mayors in connection with these contracts. And that's the appendix at 185. This conversation and ongoing nature of the relationship. And that's to you, that's the key evidence that shows that the 666 elements were met. Yes, Your Honor. And I will say through this period of Mr. Mercado's testimony generally, he goes on to explain in detail. These are just kind of a couple excerpts for Your Honors to illustrate the type of relationship and the nature of the agreement. But Mr. Mercado also does say specifically, I don't have the record in front of me, but that Mr. Mercado knew that the mayors had the authority to award municipal contracts and that the defendant was a close friend and advisor to the mayors. And that Mr. Mercado understood that the defendant would help him obtain municipal contracts and get paid under those contracts. And that's at 183, 180. In those exchanges, is there anything indicating that Mercado understood that that was the case because Carrasco was a representative of the municipalities? Yes, Your Honor. At one point, Mr. Mercado testified that the defendant was, quote, the attorney for the municipalities. And that's at appendix 180. And that because of that, the defendant had, quote, total access to and total influence with the municipal mayors. And that's at 185. I do. Could you shift your focus to the sentencing enhancements and specifically the involving a public official enhancement? So if we don't agree that Carrasco was a public official in the high-level decision-making capacity position, are there cases that apply that enhancement to a person like Carrasco? What's your theory as to why that enhancement applied here? Yes, Your Honor. The government has two points on that. First, that the offense involved an elected public official. So under that theory, the government posits that this crime involved the elected public officials, that is, municipal mayors in this case. And that the defendant's agreement was that he would agree to exert his influence and advise the mayors to award the contract to Mr. Mercado. But separately, the government also argues that the defendant himself in the enhancement is proper because the defendant himself was a public official holding a high-level decision-making or sensitive position. And for that, I would point, Your Honor, to both the scope of responsibilities that the defendant had with these municipalities, as well as Mr. Mercado's testimony, including what I just discussed with Judge Farron regarding that he was, quote, the attorney for these municipalities. And there is also the other part of this where Mr. Mercado testified that the contracts that he ended up getting from these municipalities was larger than what he had ever received previously. And so that is also evidence that this plan did, in fact, come to fruition because Mr. Mercado was rewarded for these contracts. Just briefly, could you address your opposing counsel's argument about the other, the obstruction of justice enhancement not applying because it was, at most, asking him to make a false, asking Mercado to make a false statement unsworn to law enforcement? Yes, Your Honor. My friend on the other side points to Application Note 4G, which discusses the statements to law enforcement. The government, instead, points to Note 4A, one of the application notes, which notes that the enhancement encompasses, for example, attempting to unlawfully influence a co-defendant or a witness. In some context, it's helpful here from the recordings to show that the defendant knew that Mr. Mercado was a potential witness and his potential co-defendant in this case, separate and apart from the statement that specifically... Is the word potential there significant? We would argue no, Your Honor. There is case law saying that a potential witness is a witness for purposes of that application? Yes, Your Honor. I would point you to Gershman out of the Second Circuit, 31F38, which states, in relevant parts, that the defendant's intent to deter cooperation with government is sufficient to trigger the enhancement, which applies where the targeted co-defendant or witness is still only a potential co-defendant or witness. And then in the language of the obstruction enhancement itself, it specifically notes that includes the attempt to obstruct or impede the administration of justice with respect to the investigation. It does not require that the witness is a trial witness or that is a charged co-defendant in this case. There's a sentencing disparity argument. We do not have time to get into that. I just want to be sure I understand factually, what was the nature of the sentence that Mr. Mercado received here? He received a 121th sentence, Your Honor. And the effect is... Sorry. Mr. Mercado? Oh, I'm sorry. Mr. Mercado? Sorry. Mr. Mercado is my question. Mr. Mercado received a deferred charge. He entered into an agreement to cooperate for a duration of time. And if he complied with the terms of that agreement, then he would not be charged in connection with this matter. Okay. Thank you. Thank you. Nothing further. Thank you, Your Honors. Thank you, counsel. At this time, Attorney Brill, please reintroduce yourself on the record. You have a two-minute rebuttal. Thank you. I'm Rachel Brill, representing Alejandro Carrasco. To the three points that were addressed during the appellee's argument. In this case, on this record, there needs to be a quo. And under the statute and under the jury instructions, setting up a meeting would not be enough. Judge Lopez spoke to how Mr. Carrasco and I wrote down represented to Mr. Mercado that he'd be in a position to help. There's no evidence that he represented to Mr. Mercado he'd be in a position to help. Or that Mr. Carrasco agreed to be influenced. There's no evidence presented that he agreed to be influenced. There's evidence presented and the government cited to the different moments when he asked for money. But he did not ask for money in exchange of anything. And that is our contention, that there's no proof of what the exchange was and whether that exchange would rise to the level of the quo that's required under the statute. I don't want you to not have a chance to respond to this. But in the colloquy that the government's pointing me to in the, not the colloquy, but the payment in exchange for that help. Yes. He would ask you, how did he ask you? Same methodology. How much is it in there for me? In the case of Arsenaleta, he wanted some specific amounts. Then it goes on to describe him asking for it in connection with contracts. So what's the, what's, what, what, what? Well, it's, he's asking for money, but it's not in exchange for doing anything. By helping you get those contracts, was the defendant serving as your attorney? No. Whose attorney was he of the municipality? Well, and okay, so two things. The leading question of, was he asking you for anything in exchange? That's the prosecutor's words, not the, not the witness's words. The witness said, he asked me for money. He didn't say, he asked me for money in exchange. The second thing is, the issue, it's like a, it's another logical thing. It's not a syllogism, but it's, he was the attorney for the municipality. And at the, at the same time, he asked him for money, but it wasn't in relation to his role as the attorney for the municipality. That is the nexus requirement, the connection requirement, that we, that we argue is insufficient. 30 seconds about the public official enhancement. There are two different public official enhancements. One is a two-point enhancement, starting at level 14 instead of level 12. And that, that is, to get that enhancement, you need to be either an officer, he's not, an employee, he's not, or a person acting on behalf of the local government. And there's no indication that he was a person acting on behalf of the local government in connection with this offense. Again, this is not 666, this is the, this is the guideline. In connection with the high level, he's certainly not a high level person. He has no decision-making abilities in the municipalities. That's a four-point enhancement. The mayors, of course, were high level elected officials, but there's, those allegations of the bribes to the mayors are not relevant conduct. Anyway, there's two different public official enhancements that have a huge impact on, on the sentence that Judge Lopez was alluding to in his final set of it is our contention is not applicable. The Mercado is not a witness. There is no intimidation, no threatening behavior, no illegal influence, all words that I'm using from the guideline application note 4A, and that's what's necessary. There, what's necessary is an intention to corruptly influence a process. The process at that point was a cooperating witness going and trying to elicit incriminating statements from a defendant, not a criminal process of any kind involving Mr. Carrasco taking place. So that is our rebuttal. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.